Kathleen J. Abke, #12422
Savanna Jones, #17624
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, Utah 84111
Telephone: (801) 532-7080
Facsimile: (801) 596-1508
kabke@strongandhanni.com
sjones@strongandhanni.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| WILLIAM J., individually and on behalf of his minor child, J.J., <br><br> Plaintiffs, <br><br> vs. <br><br> BLUECROSS BLUESHIELD OF TEXAS; TEXAS INSTRUMENTS, INC; and TI WELFARE BENEFITS PLAN, <br><br> Defendants. | **COMPLAINT** <br><br><br> Case No. 2:22-cv-00407-DBP <br><br> Judge Dustin B. Pead |

Plaintiffs William J. ("William") and J.J. ("JJ"), by and through undersigned counsel, complain and allege against Defendants BlueCross BlueShield of Texas ("Blue Cross"); Texas Instruments, Inc. ("TI") and TI Welfare Benefits Plan (the "Plan"), as follows:

## PARTIES, JURISDICTION AND VENUE

1. William and JJ are individuals residing in St. Charles County, Missouri. William is JJ's father.

2. Texas Instruments is a technology company headquartered in Dallas, Texas. At all relevant times, William was an employee of TI and he continues to be employed by TI.

3. The Plan is a self-funded employee welfare benefit plan under 29 U.S.C. § 1001 et seq., the Employee Retirement Income Security Act of 1975 ("ERISA") offered to employees of TI. At all relevant times, William was a participant in the Plan and JJ was a beneficiary of the Plan. William and JJ continue to be participants and beneficiaries of the Plan.

4. BlueCross BlueShield of Texas, is an insurance company headquartered in Richardson, Texas, and is a member of the Blue Cross Blue Shield Association. Blue Cross was the third-party claims administrator for the Plan.

5. At all relevant times, Blue Cross acted as an agent for the Plan and TI.

6. As a beneficiary of his father's health insurance plan, JJ received treatment, which Blue Cross is responsible to cover, at Shelterwood Residential Treatment Center ("Shelterwood") in Independence, Missouri from April 21, 2021 through December 18, 2021.

7. Shelterwood is a Missouri-licensed residential facility that provides sub-acute inpatient treatment to adolescents with mental health, behavioral and/or substance abuse problems.

8. Shelterwood is fully accredited through Cognia and a member of the National Association of Therapeutic Schools and Programs (NATSAP). Shelterwood also carries the Gold Seal of Approval from the Joint Commission, a nationally recognized healthcare accrediting body.

9. Blue Cross denied claims for payment of JJ's medical expenses in connection with his treatment at Shelterwood.

10. This Court has jurisdiction over this case under 29 U.S.C § 1132 (e)(1) and 28 U.S.C. § 1331.

11. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's nationwide serve of process and venue provisions, and because BCBSNC routinely does business in Utah and across the United States through its network of affiliates. In addition, venue in Utah will save the Plaintiff costs in litigating this case. In light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely JJ's privacy will be preserved.

12. Plaintiffs seek payment of JJ's denied claims from April 21, 2021 through December 18, 2021 (the "DOS") pursuant to the terms of ERISA the Plan, and pursuant to 29 U.S.C § 1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Defendants' violation of the Mental health Parity and Addiction Equity Act of 2008 ("MHPAEA").

13. Plaintiffs also seek an aware of prejudgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

## GENERAL ALLEGATIONS

14. JJ is the oldest of five children. JJ spent his early life in Indiana and later his family relocated to Missouri.

15. JJ had difficulty adjusting to life in Missouri and began struggling with behavioral and mental health issues including anxiety and depression.

16. JJ also struggled in school with completing assignments and remaining focused on tasks. He also demonstrated impulsive, hyperactive behavior. He was diagnosed with attention deficit hyperactivity disorder ("ADHD").

17. JJ began engaging in risk-taking behaviors such as stealing and started smoking, drinking alcohol and using drugs. JJ was dishonest with his parents and refused to abide by household rules.

18. JJ's mental health struggles culminated in a suicide attempt in the summer of 2020 and was subsequently hospitalized for psychiatric care. Upon his discharge, it became apparent to JJ's parents that JJ required a higher level of care and supervision than they could provide at home.

19. Before entering residential treatment, JJ attempted outpatient individual and group therapy, intensive outpatient therapy, substance abuse treatment and inpatient psychiatric care on three occasions.

20. JJ was admitted to Shelterwood on April 21, 2020 for treatment of his anxiety, suicidal ideation, substance abuse and mental, emotional and behavioral issues.

21. During his time at Shelterwood, JJ participated in individual and group therapy with licensed mental health counselors. An individualized treatment plan was developed and JJ's progress was monitored and overseen by licensed counselors.

22. JJ made significant progress with his various mental health and behavioral issues while at Shelterwood and was discharged from treatment on December 18, 2021.

23. Shelterwood is a residential treatment center and is classified as an intermediate level of care because it offers services which are less intensive than acute hospitalization but more intensive than outpatient treatment.

24. The Plan does not contain any exclusions for intermediate behavioral health treatment and does not define "adolescent residential treatment centers." Accordingly, there is no indication in the Plan that 24-hour nursing care must be available for coverage of any behavioral

health service, much less intermediate level mental health treatment or residential treatment for adolescents.

25. Even if there were such an exclusion, 24-hour nursing care is an acute care criterion, and not one that is applied to analogous intermediate medical/surgical care benefits.

26. The only exclusions applicable to Behavioral Health Care Services found in the Plan are behavioral health services are not covered for stammering or stuttering; specific delays in mental development; mental retardation; education, training, recreation (therapeutic or otherwise) or services and supplies not regularly part of institutional care; and missed appointments, telephone consultations or personal comfort items. None of these exclusions apply to JJ's treatment at Shelterwood.

### *Prelitigation Claims Denials and Appeals*

27. On or about April 23, 2021, William contacted Blue Cross about whether JJ's services at Shelterwood would be covered by the Plan.

28. After an extensive telephone discussion with a Blue Cross representative and their supervisor, William was told that the treatment would not be covered because Shelterwood did not have 24-hour nursing care.

29. William requested that Blue Cross issue a written denial explaining its rationale, but the Blue Cross agents refused to do so. Blue Cross did not advise William of the portions of the Plan that it was relying upon to support its denial, not did Blue Cross advise William of his rights to appeal Blue Cross' decision or the time in which do so.

30. Despite Blue Cross' failure to provide him with any information or instructions regarding the internal appeals process, on July 24, 2021, William submitted a written appeal to Blue Cross.

31. In his appeal, William argued that JJ's treatment at Shelterwood is covered under the Plan. William explained that there are no exclusions for intermediate behavior health treatment in the Plan and no requirement that such a facility provide 24-hour nursing care.

32. Given the nature of the issues related to JJ's treatment and to demonstrate that Blue Cross was providing a full, fair, and thorough review of his appeal, William requested that Blue Cross assign a medical or vocational expert who is knowledgeable about generally accepted standards and clinical best practices for residential programs in the state of Missouri where Shelterwood is located as well as appropriately qualified and experienced in order to provide a meaningful response to his appeal.

33. William also reminded Blue Cross of his rights under both ERISA and MHPAEA. Specifically, she advised Blue Cross that plans such as the Plan that offer behavioral health benefits are required to offer those benefits at parity with comparable medical or surgical benefits and that MHPAEA requires coverage for intermediate facilities such as Shelterwood.

34. On July 24, 2021, Blue Cross sent a letter to William denying the Level One Member Appeal for "Pre-Service" dates of service because Shelterwood "does not offer 24-hours a day registered nursing services."

35. In the July 24, 2021 denial, the Blue Cross reviewer was identified only as "Jennifer S" and that she was an "Appeals Specialist".

36. The letter went on to state cite various provisions of the Plan, none of which indicated that 24-hour nursing care is required for intermediate behavioral health facilities like Shelterwood.

37. The letter concluded by stating that William had exhausted his internal appeal rights. Thus, Plaintiffs have exhausted their administrative remedies and are now entitled to bring this ERISA action against Defendants.

38. JJ continued receiving treatment at Shelterwood after Blue Cross' July 24, 2021 denial.

39. Claims for all DOS at Shelterwood have been submitted to Blue Cross, but to date Blue Cross has failed to process the claims. Instead, Blue Cross has only issued Explanation of Benefits forms stating that it has "asked your health care provide for more information" and will process the claim once the information is received.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))

40. Defendants incorporate by reference paragraphs 1 through 39, above.

41. ERISA sets higher-than marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as United, acting as an agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

42. ERISA also emphasizes accurate claims processing and evaluation by requiring administrators to provide a "full and fair review' of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-ligation appeals process. 29 U.S.C. § 1133(2).

43. Defendants breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. §§ 1104 and 1133 to act solely in Plaintiffs' interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries.

44. Specifically, Defendants breached their fiduciary duties by:

a. Failing to properly administer claims for benefits by refusing to issue a proper denial, failing to inform Plaintiffs of the specific basis and support for the denial and failing to advise Plaintiffs of their rights to appeal the adverse benefit decision;

b. Failing to provide a full, fair and complete review of Plaintiffs' level one appeal that considered and addressed all comments, documents, records and information provided by Plaintiffs;

c. Failing to appropriately review JJ's denied claims, including failing to meet the requirement that medical reviewers have opinions and expertise equivalent to the claimant's treating providers;

d. Failing to adhere to ERISA's appeal response requirements by citing to portions of the Plan that did not support the stated bases for denying Plaintiffs' claims;

e. Failing provide coverage for JJ's treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders;

f. Applying exclusion criteria that did not exist in the Plan to deny Plaintiffs' claims;

g. Failing to properly process, review and respond to Plaintiffs' ongoing claims for payment of JJ's treatment at Shelterwood by falsely claiming that it has "requested more information" from Shelterwood and cannot process the claims until such unidentified information is obtained.

45. The denial of benefits JJ's treatment was a breach of contract and caused William to incur medical expenses that should have been paid by the Plan in an amount totaling over $70,000.

## SECOND CAUSE OF ACTION

**(Claim for Violation of MHPAEA Under 29 U.S.C. § 1132(a)(3))**

46. Defendants incorporate by reference paragraphs 1 through 45, above.

47. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MPAEA is part of United's fiduciary duties.

48. MHPAEA requires ERISA plans to provide coverage for mental health treatment and substance use disorders that is no less generous or favorable than that provided for treatment of medical/surgical disorders and conditions.

49. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by ERISA plans and from imposing separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C. § 1185(a)(3)(A)(ii).

50. Examples of improper nonquantitative treatment limitations under MHPAEA include, but are not limited to: medical management standards limiting or excluding benefits based on medical necessity; restrictions based on geographic location; facility type, provider specialty; and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii)(A) and (H).

51. The Plan offers comparable benefits for medical/surgical treatment that the Plan excluded for JJ's treatment, including sub-acute inpatient treatment settings including skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. Defendants do not exclude or restrict coverage of these analogous medical/surgical conditions by imposing restrictions such as those applied to JJ's claims in the manner they excluded coverage of JJ's treatment at

Shelterwood. Doing so would violate both the terms of the insurance contract and generally accepted standards of medical practice.

52. Defendants violated MHPAEA by applying more restrictive coverage standards, to wit, the requirement of 24-hour nursing care, to JJ's claim for intermediate residential mental health treatment than it does for other types of subacute care; by offering an incorrect and arbitrary denial reason that is not based on the terms of the Plan; and by enforcing more restrictive criteria for mental and behavioral health services as applied to JJ's care for the express purpose of avoiding payment for services.

53. The actions of Defendants in failing to provide coverage for JJ's treatment violates the terms of the Plan, ERISA and its underlying regulations, and MHPAEA.

54. The actions of Defendants have caused damage to Plaintiffs in the form of denial of payment of JJ's treatment.

55. Plaintiffs have the right to obtain appropriate equitable remedies under 29 U.S.C. § 1132(a)(3) based on United's and the Plan's violations of MHPAEA including, but not limited to:

    a) A declaration that Defendants' actions violate MHPAEA;

    b) An injunction ordering Defendants to cease violating MHPAEA and requiring compliance with the statute;

    c) An order requiring the reformation of the Plan's terms and the criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    d) An order requiring disgorgement of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan and United insured plans as a result of Defendants' violations of MHPAEA;

e)   An order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' MHPAEA violations;

f)   An order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

g)   An order equitably estopping Defendants from denying Plaintiffs' claims in violation of MHPAEA; and

h)   An order providing restitution from Defendants to Plaintiffs for their losses arising out of Defendants' violations of MHPAEA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be proven at trial, as follows:

1. Judgment in the total amount that is owed for JJ's mental health treatment at Shelterwood from April 21, 2021 through December 18, 2021.

2. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined in Plaintiffs' Second Cause of Action.

3. Pre- and post-judgment interest on the past due benefits pursuant to Utah Code Ann. § 15-1-1.

4. Attorney fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

5. For such further relief as the Court deems just and proper.

ff

DATED this 16th day of June 2022.

        STRONG & HANNI

        */s/ Kathleen J. Abke*
By: _____
        Kathleen J. Abke
        Savanna Jones
        *Attorneys for Plaintiffs*